**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> BRUCE CAMERON CONWAY, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § Civil Action No.: 3:25-cv-2101 <br> § <br> § <br> § JURY TRIAL DEMANDED <br> § <br> § <br> § <br> § |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "SEC"), for its Complaint against Defendant Bruce Cameron Conway ("Conway" or "Defendant"), alleges as follows:

## SUMMARY OF THE ACTION

1. Beginning on July 22, 2020, Conway committed insider trading when he purchased shares of Cancer Genetics, Inc. ("CGIX") common stock, which was then a publicly traded company. Conway purchased the stock on the basis of material nonpublic information obtained as part of his investment into a privately-held biotechnology company ("Private Biotech Company") that planned to merge with CGIX. Conway's investment adviser approached him about a potential investment into Private Biotech Company. After agreeing to confidentiality terms, Conway learned that Private Biotech Company would merge into an unidentified NASDAQ-traded public company. Within a week, Conway learned from his investment adviser

1

that the public company was CGIX. He then purchased CGIX shares in fifteen accounts belonging to him, his wife, his daughter, his son, and other family-owned trust accounts. When CGIX publicly announced the merger about one month later, its stock price increased by 215% from the previous day's closing price, and that same day Conway began to sell CGIX shares. Conway's illegal insider trading generated approximately $160,000 in trading profits across the fifteen accounts.

2.     By engaging in this conduct, Conway violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and unless restrained and enjoined, will continue to violate the federal securities laws.

3.     The SEC seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws by engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (b) ordering Defendant to disgorge any ill-gotten gains he received with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(3), (5), and (7) [15 U.S.C. §§ 78u(d)(3), (5) and (7)]; (c) ordering Defendant to pay civil money penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

4.     The SEC brings this action pursuant to authority conferred upon it by Exchange Act Sections 21(d) and 21A [15 U.S.C. §§ 78u(d) and 78u-1].

5.     This Court has jurisdiction over this action pursuant to Exchange Act Sections 21(d), 21(e), 21A, and 27(a) [15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa].

6.     Venue is proper in this Northern District of Texas pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Conway is an inhabitant of the District, and certain of the acts, practices, courses of business, and transactions constituting the violations alleged herein occurred within the District.

## DEFENDANT

7.     **Bruce Cameron Conway** is 74 years old and resides in Dallas County, Texas. Conway asserted his Fifth Amendment rights against self-incrimination when asked about his purchase of CGIX shares during the SEC's investigation. Conway entered into a tolling agreement with the SEC, tolling the statute of limitations until September 30, 2025.

## OTHER RELEVANT ENTITIES

8.     **Private Biotech Company** was a privately-held biotechnology company organized in Minnesota. Private Biotech Company merged into Cancer Genetics, Inc.

9.     **Cancer Genetics, Inc.** ("CGIX") was a publicly-traded biotechnology company, incorporated in Delaware and headquartered in Rutherford, New Jersey. CGIX's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on the Nasdaq exchange under the ticker "CGIX." CGIX announced a definitive merger agreement with Private Biotech Company on August 24, 2020 and subsequently rebranded as Vyant Bio, trading on the Nasdaq exchange under the ticker VYNT. In 2023, Vyant delisted from the Nasdaq and its board of directors dissolved the company in December 2023.

10.     "**Investment Adviser**" is a Texas-based investment adviser. Conway signed an advisory agreement with Investment Adviser in 2017. In July 2020, Investment Adviser alerted Conway to a potential investment into Private Biotech Company.

3

## FACTUAL ALLEGATIONS

**A.     Conway is Notified about a Private Biotech Company Investment and Merger Opportunity.**

11.     Conway signed an investment advisory agreement with Investment Adviser in 2017, and Investment Adviser regularly provided investment advice and services to Conway pursuant to the agreement.

12.     On or around July 15, 2020, Conway spoke with an employee of Investment Adviser ("Investment Adviser Employee 1") about a potential investment into Private Biotech Company.

13.     Following Investment Adviser Employee 1's conversation with Conway, on July 15, 2020, Investment Adviser Employee 1 forwarded information about the potential Private Biotech Company investment to Conway. This email described the potential investment, in particular highlighting that "[Private Biotech Company] has been negotiating to merge into a micro-cap biotech ('Pubco') wherein the [Private Biotech Company] shareholders will own 79.9% of the company and control the board of directors." The investment was structured as a convertible note "to facilitate the merger." Investment Adviser Employee 1 ultimately recommended the purchase of Private Biotech Company convertible notes, and added a note to Conway "I would love to see you invest with us."

14.     The information provided to Conway by Investment Adviser was material nonpublic information.

15.     Also on July 15, 2020, another employee of Investment Adviser ("Investment Adviser Employee 2") sent Conway a confidentiality agreement, noting that the merger would result in Private Biotech Company becoming a "NASDAQ listed public company" and because the Private Biotech Company investment "involves a public company, we are bound by a non-

disclosure agreement." The agreement sent to Conway required that he "not share, forward, or otherwise act upon the non-public confidential information of the public company target that we share with you verbally or electronically." Materials describing the deal were also marked "Confidential." Conway agreed to keep information related to the deal confidential in an email, writing "I am emailing a response to agree to keep this confidential." Conway did not return the signed confidentiality agreement, telling Investment Adviser Employee 2 that his printer was out of ink.

16.    Conway was aware of the sensitive nature of the material nonpublic information relating to securities issuers and the duties and obligations attendant upon receiving such information, which were explained in the confidentiality agreement he was sent.

17.    Conway invested $100,000 into Private Biotech Company convertible notes, closing the deal on July 22, 2020.

**B.    Conway Learns that Pubco is CGIX.**

18.    Between July 15, 2020 (when Investment Adviser Employee 1 and 2 contacted him about the Private Biotech Company investment) and July 22, 2020 (when he closed the investment), Conway learned from an employee of Investment Adviser that "Pubco," as referred to in the Private Biotech Company deal materials, was CGIX.

19.    During a March 18, 2022 call with an SEC staff attorney ("SEC Attorney"), Conway admitted that he knew the identity of Private Biotech Company's merger target before he bought CGIX shares.

**C.      Conway Purchases CGIX Shares in Fifteen Family Accounts.**

20.      Beginning on July 22, 2020, the same day that Conway finalized the $100,000 purchase of Private Biotech Company convertible notes, he began to purchase CGIX shares in three accounts in his name.

21.      Conway had never heard of CGIX prior to his July 2022 conversations with Investment Adviser employees.

22.      Conway purchased CGIX *for the first time* after learning about the impending CGIX- Private Biotech Company merger. Conway had never purchased CGIX previously.

23.      Specifically, between July 22 and August 21, 2020, Conway purchased 16,500 shares in his Roth IRA account. Between July 30 and August 17, 2020, Conway purchased 2,000 shares in his individual brokerage account. And between August 3 and 10, 2020, Conway purchased 500 shares in another individual brokerage account. In total, between July 22, 2020 and August 21, 2020, Conway purchased 19,000 CGIX shares in his personal trading accounts.

24.      Conway also purchased CGIX in twelve other Conway family-associated accounts beginning on July 23, 2020. Conway had trading authority in nine of the twelve accounts. All CGIX trades in these accounts were made by Conway.

25.      The same IP address logged into Conway's, his wife's, his daughter's, and his son's trading accounts during late July 2020.

26.      Conway purchased 4,950 CGIX shares in two brokerage accounts held in his wife's name: 3,200 shares in one account between July 27 and August 19, 2020; and 1,750 shares in another on July 27, 2020.

27.      Conway purchased 4,200 CGIX shares in three brokerage accounts held in his daughter's name: 600 shares in one between July 27 and August 6, 2020; 3,000 shares in another

between July 28 and August 12, 2020; and 600 shares in a third between August 11 and 12, 2020.

28.    Conway purchased 6,800 CGIX shares in two brokerage accounts held in his son's name: 3,800 shares in one between July 23 and August 19, 2020; and 3,000 shares in a second between July 28 and August 12, 2020.

29.    Conway purchased 13,300 CGIX shares in five brokerage accounts belonging to Conway family-associated trusts: 2,800 shares in one between July 27 and August 12, 2020; 2,800 shares in another between July 27 and August 12, 2020; 3,000 shares in a third between July 28 and August 12, 2020; 2,500 shares in a fourth between July 31 and August 21, 2020; and 2,200 shares in a fifth between August 3 and 14, 2020.

30.    In total, Conway purchased 48,250 CGIX shares in fifteen accounts between July 22, 2020 and August 21, 2020 before the announcement of the CGIX- Private Biotech Company merger. The average CGIX purchase price across the Conway-associated accounts was $2.99/share.

31.    Investment Adviser Employee 1 admonished Conway after learning that Conway had bought CGIX.

32.    Conway purchased CGIX stock on the basis of material, nonpublic information about the CGIX-Private Biotech Company merger. Conway knew, consciously avoided knowing, or was severely reckless in not knowing that the information was material and nonpublic and used that information in the purchase of CGIX stock, which was a substantial factor in his decision to purchase those securities.

33.    Conway's purchases of CGIX stock violated the confidentiality agreement from Investment Adviser, which he agreed to be bound. Conway breached a duty of trust and

confidence by trading on the basis of the information and, in so doing, Conway acted with an intent to deceive or defraud.

**D.    Conway Sells CGIX Shares After the Public CGIX- Private Biotech Company Merger Announcement.**

34.    Before markets opened on August 24, 2020, Private Biotech Company and CGIX publicly announced they had entered into a definitive merger agreement. That day, the stock closed at $6.25/share (with intraday trading reaching as high as $10.39), after closing at $2.90/share the prior day.

35.    The same day as the CGIX- Private Biotech Company merger announcement, Conway sold 4,800 shares of CGIX in four accounts: 3,000 shares in his personal brokerage account; 700 shares in one of his wife's accounts; 500 shares in one of his son's accounts; and 600 shares in one of his daughter's accounts.

36.    The value of Conway's CGIX shares increased in value by $160,936.22 from the purchase dates of the shares until closing on August 24, 2020, the day of the merger announcement.

## CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

37.    The SEC realleges and incorporates by reference paragraphs 1 through 36, as though fully set forth herein.

38.    By virtue of the foregoing, Conway, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under

which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon persons.

39.    By virtue of the foregoing, Conway, directly or indirectly violated, and unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Find that Conway violated the provisions of the federal securities laws as alleged herein;

### II.

Permanently restrain and enjoin Conway from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### III.

Order Conway to disgorge all ill-gotten gains received during the period of the violative conduct, plus prejudgment interest thereon, pursuant to the Court's equitable powers and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

### IV.

Order Conway to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

9

V.

Retain jurisdiction of this action in accordance with the principles of equity and the

Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders

and decrees that may be entered, or to entertain any suitable application or motion for

additional relief within the jurisdiction of this Court; and

VI.

Grant such other and further relief as this Court may deem just, equitable, and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC demands trial by

jury in this action of all issues so triable.

Dated: August 7, 2025                              Respectfully submitted,


 /s/ John Dwyer
John Dwyer
Colorado Bar No. 45109
Jodanna L. Haskins
Colorado Bar No. 41285
*Pro Hac Vice* Application Pending
United States Securities and Exchange Commission
Denver Regional Office
1961 Stout St., Suite 1700
Denver, CO 80294
Telephone: 303-844-1024
Facsimile: 303-297-3529
DwyerJ@sec.gov

Jason Rose
Texas Bar No. 24007946
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX 76102
Telephone: 817- 978-1408
Facsimile: 817-978-4927

10

RoseJ@sec.gov

COUNSEL FOR PLAINTIFF
U.S. SECURITIES AND EXCHANGE COMMISSION